UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

POWERWEB ENERGY, INC.,  :
    Plaintiff,  :
  :
v.  :   3:12CV220 (WWE)
  :
HUBBELL LIGHTING, INC. and  :
HUBBELL BUILDING AUTOMATION,  :
    Defendants.  :

**MEMORANDUM OF DECISION ON MOTION TO DISMISS OR FOR A MORE DEFINITE STATEMENT**

    This action concerns agreements made between plaintiff Powerweb Energy, Inc. ("Powerweb") and defendants Hubbell Lighting, Inc. and Hubbell Building Automation ("Hubbell Defendants") relative to a project to design, develop and manufacture certain lighting components and equipment. Plaintiff asserts claims of breach of contract, breach of implied duty of good faith and fair dealing, unjust enrichment, violation of the Connecticut Uniform Trade Secrets Act ("CUTSA"), misappropriation of idea, conversion, breach of fiduciary duty, and violation the Connecticut Unfair Trade Practices Act ("CUTPA").

    Defendants have filed a motion to dismiss. For the following reasons, the motion will be denied.

## BACKGROUND

    The following background is reflected in the allegations of the complaint, which are considered to be true for purposes of this ruling.

    Powerweb is a privately held corporation that designs products and services in the energy management and controls technology arena.

Hubbell Lighting is one of the top lighting companies in the world.  Hubbell Automation is an established leader in the electrical industry.

On April 3, 2007, Powerweb entered into a Mutual Confidentiality Agreement ("Non Disclosure Agreement") with Hubbell Lighting, so that the parties could exchange information necessary for the design, development and manufacture of certain lighting components and equipment.

On November 12, 2008, Powerweb and Hubbell Defendants entered into an Exclusive Supply, Purchase and License Agreement ("License Agreement").  At paragraph 10.1, the License Agreement provided:

> Columbia and Powerweb agree that during the Term of this Agreement each will disclose to the other information including without limitation trade secrets and other proprietary information marked as "Confidential" or, if disclosed orally, described as "Confidential" by the disclosing Party (the "Confidential Information") regarding matters dealing with actions necessary to carry out the terms of this Agreement.  Each Party agrees that they will keep the other Party's Confidential Information and all related matters confidential and prevent disclosure of said Confidential Information by its agents, employees or representatives.  Neither Party shall disclose the other Party's Confidential Information to any other person or entity without their prior written consent of the disclosing Party.  Each Party shall safeguard the Confidential Information of the other Party with at least the same degree of care with which it guards its own Confidential Information, but in no event exercise less than a reasonable standard of care.  The recipient shall use the Confidential Information only for the purposes of performing its obligations under this Agreement.

Paragraph 22 provided that the terms of the agreement "which by their nature extend beyond the expiration, termination or cancellation of this Agreement shall remain in full force and effect until fulfilled and/or performed and shall inure to the benefit of and be binding upon POWERWEB and COLUMBIA and their respective successors and assigns."  Powerweb maintains that these provisions precluded

defendants from using Powerweb's Confidential Information at any time without Powerweb's prior written consent.

On December 2010, Powerweb and Hubbell Defendants entered into an Expanded Exclusive Supply, Purchase and License Agreement ("Expanded License Agreement") as of the same effective date as the previous License Agreement (November 12, 2008).

In reliance on the Confidentiality Agreement, Powerweb disclosed confidential trade secrets and proprietary technical details to Hubbell Defendants on numerous occasions, regarding a revolutionary method of controlling lighting fixtures to maximize a building's energy efficiency ("Powerweb Technology").  The Powerweb Technology was marked "Confidential" when Powerweb disclosed it to Hubbell Defendants.

Hubbell Defendants planned to incorporate the Powerweb Technology into all of its newly manufactured products and into retrofitting kits for its previously manufactured products.  Powerweb adapted the Powerweb Technology for use in Hubbell Defendants''s products.  Powerweb maintains that in February 2011, Hubbell Defendants stopped working with Powerweb and used the Powerweb Technology with another company without Powerweb's consent.  Hubbell Defendants have offered the same products contemplated by the License Agreement under the guise of another name without compensating Powerweb.

Powerweb alleges lost profits.

**DISCUSSION**

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distrib. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A plaintiff is obliged to amplify a claim with some factual allegations to allow the court to draw the reasonable inference that the defendant is liable for the alleged conduct. Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937 (2009).

Pursuant to Federal Rule of Civil Procedure 12(b)(1), a case may be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate it. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).

<u>Ripeness</u>

Defendants argue that this Court lacks subject matter jurisdiction because the case is not ripe for adjudication. Specifically, Hubbell Defendants maintain that the License Agreement requires that Powerweb provide defendants with a written notice of breach of contract and 60 days to cure the breach.

Powerweb filed this action in February 2012 asserting a breach of contract. It appears that Hubbell Defendants maintain that there is nothing to cure because they

have not breached a duty to Powerweb.  Review of the specific contractual provision reveals that it does not preclude this Court's jurisdiction over the matter even if a breach did occur.

Paragraph 12.1(a) provides:

> If either party breaches any of the terms of this Agreement, the complaining party may send written notice of the breach to the other party.  If the other party does not cure the breach within sixty (60) days of sending of the notice of the breach, or within such further period as the complaining Party may permit in writing, the complaining party may terminate this Agreement.

The use of the word "may" demonstrates that this provision is permissive rather than mandatory.  Further, the cure provision is relevant to a party who seeks to terminate rather than, as in this case, a party suing for breach of duty.  Accordingly, the motion to dismiss for lack of subject matter jurisdiction will be denied.

<u>Failure to State a Claim</u>

Upon review of the pleadings, the Court finds that Powerweb has stated plausible claims for breach of contract, breach of the duty of good faith and fair dealing, unjust enrichment, misappropriation of trade secrets in violation of Connecticut General Statutes § 35-51, misappropriation of idea, conversion, breach of fiduciary duty and violation of CUTPA.

<u>Contract and Breach of the Covenant of Good Faith and Fair Dealing Claims</u>

As to the claims of breach of contract and breach of the duty of good faith and fair dealing, plaintiff Powerweb has pleaded the elements of the requisite prima facie case for each claim.

The elements of a breach of contract are the formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. Namoury v. Tibbetts, 2005 WL 81615, *3 (D. Conn. Jan. 11, 2005). The duty of good faith and fair dealing is implied in every contractual relationship, and a claim for breach thereof requires that the plaintiff demonstrate that the defendant engaged in bad faith that impeded the plaintiff's right to receive the contract benefits. Walters v. Generation Financial Mortgage, LLC, 2011 WL 2533704, *2 (D. Conn. June 27, 2011). The complaint alleges that plaintiff disclosed its confidential information comprising its Powerweb Technology pursuant to an agreement that Hubbell Defendants would not use such information.

Hubbell Defendants complain that the term "Powerweb Technology" is undefined and that it is unclear when, how or to whom the alleged confidential information was disclosed. However, the term "Powerweb Technology" is defined in the complaint and in agreements attached to the complaint as exhibits. Further, the complaint adequately alleges the circumstances and nature of the breach of confidentiality for purposes of stating a plausible claim.

To plead bad faith as required for the breach of the duty of good faith and fair dealing, Powerweb is not required to plead allegations of fraud with particularity; instead, it may plead deception and sinister motive to satisfy the bad faith element. Andersen v. Governor & Co. of the Bank of Ireland, 2011 WL 6001621, *6 (D. Conn.). Here, Powerweb has alleged that Hubbell Defendants acted in bad faith by demanding design changes and using Powerweb's inability to fund the design changes as an excuse to proceed without Powerweb and avoid sharing the profits as agreed. The

6

Court must accept such allegations as true and need not probe the nature of the alleged confidential information in ruling on this motion to dismiss.

Unjust Enrichment

Plaintiff has alleged that it conferred a benefit on Hubbell Defendants by disclosing and adapting the Powerweb Technology and that it has not been paid to its detriment. Hubbell Defendants assert that plaintiff has not alleged that it conferred a benefit. Plaintiff need not disclose the specific nature of the confidential information allegedly disclosed at this stage of the pleadings. The Court will determine whether a benefit was conferred at trial.

Misappropriation of Trade Secrets

Defendants argue that the misappropriation of trade secrets claim must fail because the complaint fails to identify the Powerweb Technology with specificity and does not describe how Hubbell Defendants misappropriated the Powerweb Technology. Hubbell Defendants maintain further that the Powerweb Technology was already known by the industry and not confidential and that defendants have not committed patent infringement.

CUTSA defines a trade secret as: information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Conn. Gen. Stat. § 35–51(d).  Section 35-51(b) provides that a misappropriation of a trade secret occurs in the following circumstances:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or (2) disclosure or use of a trade secret of another without express or implied consent by a person who (A) used improper means to acquire knowledge of the trade secret; or (B) at the time of disclosure or through a person who had utilized improper means to acquire it; (ii) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use, including but not limited to disclosures made under section 1–210, sections 31–40j to 31–40p, inclusive, or subsection (c) of section 12–62; or (iii) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or (C) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

As stated previously, the Powerweb Technology is adequately defined in the complaint and exhibits attached thereto.  Further, the complaint alleges that the Powerweb Technology was marked "Confidential" when disclosed pursuant to an agreement that it would not be used; that plaintiff retained ownership of the Powerweb Technology and took reasonable measures to protect its secrecy; that the Powerweb Technology is not generally known to or readily ascertainable by others who would obtain economic value from its disclosure or use; that the Powerweb Technology was used without plaintiff's consent; and that plaintiff suffered harm from the Powerweb Technology use.   The Court must accept as true plaintiff's assertion that the Powerweb Technolgy is not already known by those in the industry or readily ascertainable by others and that plaintiff has taken reasonable measures including the use of a confidentiality agreement to protect its secrecy.  Further, plaintiff is not required to assert that defendant misappropriated its patented information to state a viable trade secret misappropriation claim.   Here, plaintiff asserts that defendants improperly used

its confidential information.  Accordingly, the Court will not dismiss the misappropriation of trade secrets claim.

### Misappropriation of Idea

Hubbell Defendants maintain that plaintiff has failed to allege a concrete and novel idea that was confidential and misappropriated.

A claim for misappropriation of idea requires that a legal relationship must exist between parties and that the idea is novel and concrete.  Ball v. Hershey Foods Corp., 842 F. Supp. 44, 47 (D. Conn. 1993).  Here, the complaint describes the development of the Powerweb Technology as a novel and concrete idea of wirelessly controlling lighting fixtures over the internet.  Further, as previously discussed, the complaint alleges that the Powerweb Technology was the subject of confidential agreements and has been used improperly by Hubbell Defendants in breach of the agreements.  Accordingly, the Court finds plaintiff has stated a plausible claim for misappropriation of idea.

### Conversion

Hubbell Defendants maintain that plaintiff's asserted property is vague, not confidential and that defendants were allowed under the agreements to make a similar product if Powerweb failed to deliver a conforming product.

In order to establish a prima facie case of conversion, the plaintiff must set forth allegations that (1) the moneys and property at issue belonged to the plaintiff, (2) the defendants deprived the plaintiff of those moneys and property for an indefinite period of time, (3) the defendant's conduct was unauthorized and (4) the defendant's conduct harmed the plaintiff.  Miller v. Guimaraes, 78 Conn. App. 760, 778 (2003).

Conversion applies to intangible property rights evidenced in a document. Hi-Ho Tower, Inc. v. Com-Tronics, Inc., 200 Conn. 20, 44 (2000). In this instance, the Powerweb Technology has been alleged to include confidential documents disclosed to defendants. As previously discussed, the Court finds that the Powerweb Technology has been defined within the complaint, that it is the subject of a confidentiality agreement, and that it was successfully adapted for defendants' use. The question of whether plaintiff actually failed to deliver a conforming product is a question of fact that cannot be resolved on a motion to dismiss. Accordingly, the motion to dismiss will be denied as to the claim of conversion.

Breach of Fidcuiary Duty

Hubbell Defendants assert that the breach of fiduciary duty claim fails because the parties acknowledged that they could not bind one another to other obligations and the Powerweb Technology is not confidential information.

The essential elements a breach of fiduciary duty pursuant to Connecticut law are: (1) That a fiduciary relationship existed which gave rise to (a) a duty of loyalty on the part of the defendant to the plaintiff, (b) an obligation on the part of the defendant to act in the best interests of the plaintiff, and (c) an obligation on the part of the defendant to act in good faith in any matter relating to the plaintiff; (2) That the defendant advanced its own interests to the detriment of the plaintiff; (3) That the plaintiff sustained damages; and (4) That the damages were proximately caused by the fiduciary's breach of duty. Censor v. ASC Technologies of Connecticut, LLC, — F. Supp. 2d — , 2012 WL 4490554, *28 (D. Conn. 2012).

Here, the License Agreement provided that each party "will keep the other Party's Confidential Information and all related matters confidential and prevent disclosure of said Confidential Information by its agents, employees or representatives." This provision gives rise to a special trust or fiduciary duty between the parties.  Further, the Court must assume as true the factual allegations that the Powerweb Technology is confidential and that defendants have breached their fiduciary duty by improperly using the Powerweb Technology resulting in loss of profits to plaintiff.  The Court finds that plaintiff's allegations satisfy the elements of a breach of fiduciary duty claim.

CUTPA

Hubbell Defendants assert that plaintiff has failed to establish a CUTPA claim by alleging (1) either deceptive act or practice in violation of public policy, and (2) an ascertainable loss.

CUTPA provides, in relevant part, that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Conn. Gen. Stat. § 42-110b(a).  The Connecticut Supreme Court has adopted the following factors known as the "cigarette rule" to determine whether a trade practice is unfair or deceptive:  "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise — whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen."  A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990).

In order to prove that the practice is unfair, it is sufficient to meet only one of the criteria or to demonstrate that the practice meets all three criteria to a lesser degree.  <u>Hartford Electric Supply Co. v. Allen-Bradley Co.</u>, 250 Conn. 334, 368 (1999).

 Plaintiff has alleged with specificity an actual deceptive practice that Hubbell Defendants demanded in bad faith that Powerweb share in the cost of unanticipated design changes knowing that Powerweb could not comply with such demands; that such demands constitute a pretext for depriving plaintiff of profits derived from defendants' use of the Powerweb Technology; and that defendants have asserted their right to use the Powerweb Technology despite full knowledge that such assertions are false.

 Further, plaintiff has alleged an ascertainable loss.  At paragraphs 33, plaintiff outlines its projected share of the net income from anticipated sales to defendants' existing customers.  Paragraph 34 states that "these projections substantially understate Powerweb's actual lost profits, because they only covered part of the contract term and did not include any of the expected increase in market share that is likely to result from Hubbell's exclusive offering of products containing the Powerweb Technology."  In light of plaintiff's prior allegations describing its investment in the development of the Powerweb Technology, the Court finds that plaintiff has adequately alleged an ascertainable loss.

 <u>Motion for More Definite Statement</u>

 Hubbell Defendants move, in the alternative, for a more definite statement.  However, the Court finds that plaintiff's complaint has sufficiently stated plausible

12

claims for relief.  Hubbell Defendants will have the opportunity to determine further details of the claims through discovery.

## CONCLUSION

For the foregoing reasons, the Court DENIES the motion to dismiss and for more definite statement (doc. #20).

Dated at Bridgeport, Connecticut, this _16th__ day of November, 2012.


                                          /s/
                                 Warren W. Eginton
                                 Senior United States District Judge