```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT

POWERWEB ENERGY, INC.           :
                                :
                                :
v.                              :    CIV. NO. 3:12CV220 (WWE)
                                :
HUBBELL LIGHTING, INC. AND      :
HUBBELL BUILDING AUTOMATION,    :
INC.                            :
```

DISCOVERY RULING

In this action, the plaintiff, Powerweb Energy, Inc., accuses defendants, Hubbell Lighting, Inc. and Hubbell Building Automation Inc., of breaching licensing contracts and of misappropriating trade secrets and confidential information in connection with wireless lighting controls. [Doc. #1]. On October 1, 2013, the Court held a telephonic conference to discuss pending discovery motions. [Doc. #211]. Prior to the telephone conference, defendants submitted a letter dated September 30, 2013 outlining various pending discovery disputes. The Court heard argument on these disputes and requested additional briefing on limited issues. On October 16, 2013, defendants submitted a second letter brief with additional argument and authority in support of their September 30, 2013 letter. On October 22, 2013, plaintiffs provided a letter in opposition.

**Background**

The current dispute between the parties centers on plaintiff's experts, and their communications. In pertinent part, plaintiff's Rule 26(a)(2) disclosures identify Rod P. Burkert and Lothar E.S. Budike, Jr. as expert witnesses. Mr.

Burkert is a specially retained expert on the issue of plaintiff's damages.  Mr. Budike is the plaintiff's CEO and primary fact witness.  He is also identified in the Rule 26(a)(2) disclosure as a witness who is not required to provide a written report because he has "not been retained or specially employed to provide expert testimony."  Plaintiff further submits that Mr. Budike is "a witness with technical knowledge who may provide opinions" under Federal Rule of Evidence 702.  Mr. Budike also provided information to Mr. Burkert, which is incorporated in Mr. Burkert's expert report.

**Applicable Law**

The issues raised by the parties warrant a brief overview of the applicable law governing the work product doctrine and expert discovery.  "The work-product rule shields from disclosure materials prepared 'in anticipation of litigation' by a party, or the party's representative, absent a showing of substantial need.  United States v. Adlman, 68 F.3d 1495, 1501 (2d Cir. 1995); Fed. R. Civ. P. 26(b)(3).  The doctrine establishes a zone of privacy for strategic litigation planning and prevention of one party piggybacking on the adversary's preparation.  See United States v. Nobles, 422 U.S. 225, 238, 95 S.Ct. 2160, 2170, 45 L.Ed.2d 141 (1975) ("At its core, the work-product doctrine shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case.").  "The initial burden of justifying the work product doctrine is on the asserting party, and the burden is a heavy one because privileges are neither lightly

created nor expansively construed." In re Methyl Tertiary Butyl Ether (MBTE) Prod. Liab. Litig., No. 1:00-1898, 2013 WL 3326799, at *3 (S.D.N.Y. June 28, 2013) (citations omitted).

The Federal Rules of Civil Procedure contemplate expansive expert discovery. In re MTBE, 2013 WL 3326799, at *6.  Federal Rule of Civil Procedure 26(b)(4)(B) provides work product protection for "drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded."  Work product protection is also afforded to communications between a party's attorney and an expert witness required to provide a report under Rule 26(a)(2)(B), unless the communications: "(i) relate to compensation for the expert's study or testimony; (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed." Fed. R. Civ. P. 26(b)(4)(C)(i)-(iii).  The Advisory Committee Note to the 2010 Amendment to Rule 26 further explains that the protection provided by Rule 26(b)(4)(C) "is limited to communications between an expert witness required to provide a report under Rule 26(a)(2)(B) and the attorney for the party on whose behalf the witness will be testifying, including any 'preliminary' expert opinions."  However, the Advisory Committee Note further states that Rule 26(b)(4)(C) "does not exclude protection under other doctrines such as privilege or independent development of the work-product doctrine." Fed. R. Civ. P. 2010 Advisory

3

Committee Note.  Nevertheless, "Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions[…] [I]nquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by this rule." Id.

> As the Advisory Committee Note to the 2010 Amendment clarifies, Rule 26 "require[s] disclosure of any material considered by [a] [testifying] expert, from whatever source, that contains factual ingredients." Moreover, the amended Rule 26 protects only the communications of counsel: "[work product] protection does not extend to an expert's *own* development of the opinions to be presented; those are subject to probing in deposition or at trial."

In re MTBE, 2013 WL 3326799, at *6 (citation omitted; emphasis in original).

Consulting experts, i.e., those not retained to provide an opinion at trial, are subject to more stringent discovery rules. Rule 26(b)(4)(D) provides that, "[o]rdinarily, a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial." Fed. R. Civ. P. 26(b)(4)(D).  A party may only do so as provided in Rule 35(b), or "on showing exceptional circumstances under which it is impracticable for the party to obtain facts or opinions on the same subject by other means." Fed. R. Civ. P. 26(b)(4)(D)(i-ii).  Nevertheless, courts in this circuit have recognized that "factual materials considered by testifying experts in forming their opinions are not protected

4

work product. For this reason, tendering materials generated by a consulting expert to a testifying expert may waive that protection." In re MBTE, 2013 WL 3326799, at *4 (citations omitted).

**Discussion**

1. Items 1 and 2 of Defendants' September 30 Letter

The first two items in the defendants' September 30, 2013 letter are now the subject of formal motions, one of which remains pending. [See Doc. ##215, 217]. The Court will issue a separate ruling for the pending motion to strike.

2. Item 3: Communications Between Testifying Experts

Defendants seek communications between plaintiff's testifying experts, Lothar E.S. Budike, Jr. and Rod P. Burkert. Defendants claim that these communications are not protected by Rule 26(b)(4) because communications between testifying experts are not protected and, likewise, communications between a client representative and a testifying expert are not protected. Plaintiff in turn argues that the communications between Mr. Budike and Mr. Burkert are protected work product under Rule 26(b)(3).[1]

The Court agrees that the work-product protection afforded by Rule 26(b)(4)(C) does not attach to communications between Mr. Burkert and Mr. Budike. It is clear from the language of the rule, and the 2010 Advisory Committee Notes, that Rule 26(b)(4)(C) only protects communications between retained experts and counsel, except to the extent that the

---

[1] Specifically, defendants seek documents responsive to requests 22,23, and 33 of the Budike Subpoena, and requests 3 through 9 of the Burkert subpoena.

communications fall within one of the three exceptions proscribed by 26(b)(4)(C)(i)-(iii).

However, plaintiffs do not solely rely on Rule 26(b)(4)(C) to protect Mr. Budike and Mr. Burkert's communications. Rather, plaintiffs claim that Rule 26(b)(3) work product protection applies to "documents authored by a party by itself or by its representative, who may or may not be an attorney. This includes both Mr. Budike and Mr. Burkert[…]" [Pl. Ltr. Oct. 22, 2013, at 2]. The Court disagrees. Although the parties fail to expressly address the interplay between Rule 26(b)(3) and (4), a recent opinion from the Tenth Circuit lends sound instruction on this issue. See In re Application of the Republic of Ecuador, 735 F.3d 1179 (10th Cir. 2013). As an initial matter, the Court rejects plaintiff's assertion that Mr. Burkert is a "party representative" as contemplated by Rule 26(b)(3). "The phrase 'party or its representatives,' implies agency, and each of the six listed examples [in Rule 26(b)(3)(A)][2] connotes someone acting in either an agency or fiduciary capacity for the 'party or its representative.'" Id. at 1184. Because no showing has been made that Mr. Burkert would have capacity to act on behalf of plaintiff, the broad work product protection afforded by Rule 26(b)(3) is inapplicable to Mr. Burkert's expert materials. See also In re Application of the Republic of Ecuador, 735 F.3d at 1182 ("The 1970 revisers made clear that Rule 26(b)(3)'s work-product doctrine extends past attorneys to a party or any

---

[2] Rule 26(b)(3)(A) provides that a party's representative includes "the other party's attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A).

6

representative acting on its behalf. At the same time, however, they made plainly clear that this protection did not bring expert information within the work-product doctrine.") (internal citations and quotations omitted).  However, because Mr. Budike is also a party representative, the Court must now determine whether Mr. Budike's communications with Mr. Burkert are subject to the work-product protections provided in Rule 26(b)(3).  The Tenth Circuit's opinion referenced above is again instructive.

In In re Application of the Republic of Ecuador, the Tenth Circuit affirmed a district court's adoption of a magistrate judge's ruling concerning the production of expert materials in response to a 28 U.S.C. §1782 application.  735 F.3d at 1181.  There, the issues involved an expert retained by Chevron for a previous trial, who prepared and received documents and communications "created in anticipation of litigation with the intent that they would be kept confidential.  These documents and communications came from a variety of sources in Chevron's litigation team, including lawyers, in-house scientists, consultants, and expert witnesses." Id.  At the district court level, Chevron argued that the 2010 revisions to Rule 26 brought materials prepared or provided to their expert under the protection of the work-product doctrine.  Id.  The magistrate judge rejected this argument, and noted that "Rule 26 does not preclude the disclosure of information constituting the basis for a report, even though prepared for use in trial." In re Application of the Republic of Ecuador, 735 F.3d at 1181.  In response to this order, Chevron produced "all of the facts and

data [the expert] considered in forming his expert opinions", but still withheld thousands of documents that it believed fell under Rule 26's work product doctrine.  Id.  Applicants then filed a motion to compel further production, which the magistrate judge partially granted.  Id.  In so ruling, the magistrate held:

> (1) Chevron may properly withhold drafts of expert reports and disclosures, in whatever form, under Rule 26(b)(4)(b);
>
> (2) Chevron may properly withhold documents containing communications between [the expert] and Chevron's attorneys under Rule 26(b)(4)(C), however, Chevron may not withhold communications between [the expert] and non-attorneys; and
>
> (3) Rule 26(b)(3) did not provide work-product protection to all documents in the hands of a reporting expert, only those documents specifically covered by Rules 26(b)(4)(B) and (C) were so protected.

Id. at 1181-82 (citing Republic of Ecuador v. Bjorkman, No. 11-cv-01740, 2012 WL 12755, at *4-6 (D. Colo. Jan. 4, 2012)).  The magistrate further reasoned that "the intention of Rule 26 is to protect the mental impressions and legal theories of a party's attorney, not its expert" and therefore held, "Chevron may not withhold any documents or information based upon the 'work product doctrine' set forth in Rule 26(b)(3), except those specifically protected by Rules 26(b)(4)(B) and (C)." Id. at 1182.  The district court affirmed and adopted the magistrate's ruling in full.  Id.

The Tenth Circuit ultimately affirmed the lower court's rulings, and pertinent to the present issue noted that

> […]the comments reinforce the strong preference for broad discovery of expert materials: "[T]he intention

>is that 'facts or data' be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients." Fed. R. Civ. P. 26(a)(2)(B) (2010 Comments). **This indifference as to the source of material refutes Chevron's contention that documents provided to an expert by a party are protected under Rule 26(b)(3)**.

In re Application of the Republic of Ecuador, 735 F.3d at 1187 (emphasis added). The Court agrees with the Tenth Circuit's reasoning that documents provided to an expert by a party are not protected under Rule 26(b)(3). Therefore, plaintiff shall produce documents responsive to the subject document requests[3], unless they fall within the purview of Rule 26(b)(4)(B)-(D) and/or the attorney-client privilege.[4] Plaintiff shall produce such documents within fourteen (14) days from the date of this ruling.

3. Item 4: Mr. Burkert's Communications with Counsel About Facts and Assumptions

During the October 1, 2013 telephone conference, the Court ordered plaintiff to produce Mr. Burkert's communications with plaintiff's counsel that disclosed facts or data considered or assumptions relied on in Mr. Burkert's analysis. [Doc. #222]. The Court permitted plaintiff to produce versions of these documents that redacted content that did not identify facts or data considered or assumptions relied on by Mr. Burkert. On October 25, 2013, defendants submitted a letter brief and

---

[3] See footnote 1, supra
[4] As set forth below, defendants are not entitled to information concerning Mr. Burkert's prior work for plaintiff as a consulting expert. Accordingly, plaintiff shall not be required to produce communications between Mr. Budike and Mr. Burkert that reference any of Mr. Burkert's prior work as a consulting expert.

requested in camera review of sixteen (16) redacted emails produced by plaintiff pursuant to the Court's October 1 Order. Defendants contend that the redactions "raise serious concerns about whether the opinions offered by Mr. Burkert are in fact his own[…]" Defendants further argue that communications between Mr. Burkert and Mr. Budike are wholly discoverable, and the redactions are generally improper.

Although the rules contemplate expansive expert discovery, "the discovery permitted by the exceptions [to Rule 26(b)(4)(C)] does not extend beyond those specific topics." Dongguk Univ. v. Yale Univ., No.3:08-CV-00441(TLM), 2011 WL 1935865, at *2 (D. Conn. May 19, 2011)(citing 2010 Advisory Committee Notes); see also Rule 26 2010 Advisory Committee Notes ("Under the amended rule, discovery regarding attorney-expert communications on subjects outside the three exceptions in Rule 26(b)(4)(C), or regarding draft expert reports or disclosures, is permitted only in limited circumstances and by court order.").  As an initial matter, the Court rejects plaintiff's position that the redacted emails constitute "draft reports" as contemplated by Rule 26(b)(4)(B).  The plain language of the rule, and the advisory committee notes, do not contemplate such a broad interpretation of the term "draft report".  See 2010 Advisory Committee Notes ("Rule 26(b)(4)(B) is added to provide work-product protection under Rule 26(b)(3)(A) and (B) for drafts of expert reports or disclosures […] It applies regardless of the form in which the draft is recorded, whether written, electronic or otherwise."). Therefore, the challenged emails are not on a general level

protected by Rule 26(b)(4)(B). Bearing this in mind, the Court finds as follows.

The redacted statements on the following documents do not fall under any of the three Rule 26(b)(4)(C) exceptions – compensation, facts, and assumptions, which require disclosure, and therefore are protected: PE-00047232; PE-00047243; PE-00047245; PE-00047251; PE-00047254; and PE-00047266. See Dongguk Univ., 2011 WL 1935865, at *2 (statements properly redacted, and therefore protected from disclosure, where the statements did not fall under any of the three Rule 26(b)(4)(C) exceptions).

The redacted statements on the following documents reflect mental impressions, conclusions, opinions and/or legal theories of plaintiff's counsel and are therefore protected: PE-00047242; PE-00047246; PE-00047253; PE-00047255-56; PE-00047258[5]; PE-00047260; and PE-00047261.

The redaction set forth on document PE-00047250 obscures the name of a document attachment. The Court finds that this redaction is not proper because this attachment was sent to Mr. Burkert and, under the broad construction of the term "considered", the attachment was ostensibly considered by him. Moreover, nothing indicates that this document is a draft expert report. Accordingly, plaintiff shall produce an un-redacted version of document PE-00047250.

The redactions on documents PE-00047263, PE-0047264, PE-0047265, and PE-0047267 are also improper in light of the above

---

[5] Although this document says it is from Mr. Budike, it actually appears to have been authored by plaintiff's counsel.

ruling that plaintiff turn over communications between Mr. Budike and Mr. Burkert.  Although Mr. Garcia is copied on the emails, this is not enough to afford the document protection where the emails are not directed to him, and do not seek legal advice.  See, e.g., U.S. Postal Serv. v. Phelps Dodge Refining Corp., 852 F. Supp. 156, 160 (E.D.N.Y. 1994) ("[T]he mere fact a communication is made directly to an attorney, or an attorney is copied on a memorandum does not mean that the communication is necessarily privileged.").  Accordingly, plaintiff shall produce un-redacted copies of PE-00047263, PE-00047264, and PE-00047265, and PE-0047267.[6]

   Defendants moreover seek that any properly redacted documents be turned over as a result of defendants' substantial need.  To overcome work product protection, the party seeking disclosure must demonstrate that "that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).  Defendants claim a substantial need for the redacted documents "to prepare a fair cross-examination of Mr. Burkert". [Defs. Oct. 25, 2013 Ltr., at 3]. Preparing for cross examination is not a sufficient "substantial need" to overcome work-product protection.  If it were, every party could compel documents properly withheld by claiming a need to prepare for cross-examination.  This is especially true where defendants had the opportunity to test the bases of Mr.

---

[6] As to document PE-00047264, the statement following the comma on the first item number 4, and the statement following the comma on item number 6, are both properly redacted, and should remain so.

Burkert's opinions through deposition testimony. See, e.g., Tribune Co. v. Purcigliotti, No. 93 CIV 7222, 1998 WL 175933, at *4 (S.D.N.Y. April 14, 1998) (citation omitted) ("'Substantial need' cannot be shown where persons with equivalent information are available for deposition."). Accordingly, the Court will not order the production of the properly redacted emails on the basis of defendants' substantial need.

   4. Item 5: Mr. Budike's Communications with Dr. Kursh

Defendants next seek communications between Mr. Budike and Dr. Samuel J. Kursh.[7] Plaintiff objected to this request on the basis of privilege and work product grounds. Defendants argue the communications sought are not protected because Mr. Budike is not an attorney, and because the disclosure of Mr. Budike as an expert regarding Powerweb's damages waived work product protection. Defendants also contend that Mr. Budike cannot escape the waiver argument by contending that he did not consider his communications with Dr. Kursh in rendering his opinions regarding plaintiff's damages. Plaintiff submits that Dr. Kursh is a damages expert, who consulted with plaintiff's counsel but is not expected to testify at trial. Accordingly, plaintiffs argue that Rule 26(b)(4)(D) precludes substantive discovery about Dr. Kursh. Plaintiff further argues that Mr. Budike did not rely on any information provided by Dr. Kursh.

Although plaintiff disclosed Mr. Budike as an expert, and listed "damages" as an area of Mr. Budike's expected testimony,

---

[7] Request 34 of the Budike Subpoena seeks "[a]ll communications, and documents concerning such communications, made between You and Dr. Samuel Kursh, or individuals at BLDS, in connection with this Matter."

plaintiff now submits that Mr. Budike is not plaintiff's damages expert, and only provided Mr. Burkert with technical and industry calculations. It is unclear in what capacity Mr. Budike may have considered Dr. Kursh's communications, especially in light of the fact that Mr. Budike provided limited testimony concerning Dr. Kursh at his <u>expert</u> deposition. <u>See</u> Budike Depo. Tr., Aug. 27, 2013, 362:1-3, 362:5-9. Given this ambiguity, and the fact that Mr. Budike's expert disclosure lists damages as an area he is expected to testify, the Court finds that plaintiff should produce any of Mr. Budike's communications with Dr. Kursh that Mr. Budike considered in forming his expert opinion. <u>See</u> <u>In re MBTE</u>, 2013 WL 3326799, at *4 ("factual materials considered by testifying experts in forming their opinions are not protected work product. For this reason, tendering materials generated by a consulting expert to a testifying expert may waive that protection."). Although Mr. Budike testified that Dr. Kursh did not provide him any information that he relied on, Budike Depo. Tr., Aug. 27, 2013, 362:1-3, ("Mr. Kirsch (sic) provide me – provided me no information that I relied on."), such statements are not dispositive in light of the broad definition given by many district courts to the word "considered". <u>See, e.g.</u>, <u>In re Commercial Money Ctr., Inc., Equip. Leasing Litig.</u>, 248 F.R.D. 532, 537 (N.D. Ohio 2008) ("[A] testifying expert has 'considered' data or information if the expert has read or reviewed the privileged materials before or in connection with formulating his or her opinion.")(internal citations and

quotation marks omitted); Yeda Research & Dev. Co., Ltd. v. Abbott GmbH & Co. KG, No. 10-CV-1836, 2013 WL 2995924, at *20 (D.D.C. June 7, 2013) ("[M]aterials reviewed or generated by an expert must be disclosed, regardless of whether the expert actually relies on the material as a basis for his or her opinions."). Alternatively, if Mr. Budike did not consider any of Dr. Kursh's communications, he may provide a sworn statement to defendants stating that he never read, reviewed or considered the subject documents in forming his opinions.

   5. Item 6: Mr. Burkert's Prior Work for Powerweb

Finally, defendants contend that they are entitled to discovery about Mr. Burkert's work in a 2010 arbitration between plaintiff and General Electric ("GE"). Defendants "believe[]" plaintiff hired Mr. Burkert to act as a consultant. Plaintiff instructed Mr. Burkert not to answer any questions about his prior consulting expert work for plaintiff on work product grounds, and has refused to produce documents.[8] Defendants contend they are entitled to certain information as it relates to Mr. Burkert's bias, and also submit that the facts and opinions known by Mr. Burkert in his prior engagement are discoverable if they relate to the subject matter on which he has been disclosed as a testifying expert. Plaintiff argues that the discovery should not be had because Mr. Burkert was a non-testifying expert in a previous matter, and even assuming Mr. Burkert served as a consultant in the GE matter, that matter

---

[8] Burkert subpoena requests 15-17 address plaintiff's 2010 arbitration against G.E. Requests 18-21 address Mr. Burkert's prior work for plaintiff regarding wireless lighting control and energy management products. Requests 1-2 and 6-9 encompass any prior work that relates to technology in this case.

involved a different project, product, and party.

As discussed above, "[w]hen an expert is retained as a litigation consultant [], materials reviewed or generated by the expert are generally privileged and immune from disclosure." Employees Committed for Justice v. Eastman Kodak Co., 251 F.R.D. 101, 104 (W.D.N.Y. 2008). However, under the set of circumstances here, the Court is "forced to grapple with what must be disclosed when an expert alternately dons and doffs the privileged hat of a litigation consultant and the non-privileged hat of the testifying witness." Id. (quoting S.E.C. v. Reyes, No. C 06-04435 CRB, 2007 WL 963422, at *1 (N.D. Cal. March 30, 2007)) (internal quotations omitted). The question then becomes

> [D]oes a litigant forfeit the privilege that would otherwise attach to a litigation consultant's work when he offers that expert as a testifying witness? Every court to address this "multiple hats" problem has concluded that an expert's proponent may still assert a privilege over such materials, but only over those materials generated or considered uniquely in the expert's role as a consultant.

Id. "Any ambiguity as to the role played by the expert when reviewing or generating documents should be resolved in favor of the party seeking disclosure." Eastman Kodak, 251 F.R.D. at 104 (quoting B.C.V. Oil Ref., Inc. v. Consol. Edison co. of N.Y., 171 F.R.D. 57, 62 (S.D.N.Y. 1997)).

The issue that the Court must consider is whether Mr. Burkert's current expert opinion relates to the same subject matter as his alleged consulting opinion in the GE arbitration. Defendants state that "[i]t appears likely that Mr. Burkert conducted a financial analysis in connection with Powerweb's

16

claim that GE Lighting misappropriated Powerweb's confidential and trade secret information in the course of developing a wireless control and energy management product." [Def. Ltr. Oct. 16, 2013, at 7] (emphasis added). Defendants go onto reference Mr. Budike's deposition testimony that allegedly "establishes the close relationship between the Light WAV product at issue [in the GE arbitration] and the Wi-Con product at issue here." [Id.]. Defendants' assertion that Mr. Burkert served as a consulting expert in the GE arbitration appears wholly speculative in light of Mr. Burkert's deposition testimony, which indicates only that he may have served as a consulting expert for Powerweb in a previous case. See Burkert Depo. Tr., Sept. 4, 2013, at 148:2-149:13; 150:11-14 (testifying that aside from litigation consulting engagements, he has never been retained to provide services to plaintiff, and he never prepared an expert report that was produced in a case involving plaintiff). Quite frankly, the record before the Court is completely devoid of facts to support an inference that Mr. Burkert worked as a consulting expert on the GE matter. Although the Court recognizes that this may in part result from counsel instructing Mr. Burkert not to answer certain questions at his deposition, defendants nevertheless should present something more than a mere "belief" before requesting relief from the Court. To the extent that defendants believe plaintiff's counsel improperly instructed Mr. Burkert not to answer during his deposition, defendants should have contacted the Court during Mr. Burkert's deposition for guidance on this

issue.

Even assuming that Mr. Burkert was engaged as a consulting expert in the GE arbitration, the Court is not convinced that the subject matter of Mr. Burkert's alleged work on the GE arbitration "directly relates to the opinion" he has offered here.  As plaintiff represents, the GE arbitration "involved a different project with a different party regarding a different product, called GEWEMS." [Pl. Ltr. Oct. 22, 2013, at 4-5]. Defendants contend that because Wi-Con is a "descendent" of Light WAV, the subject matter of Mr. Burkert's alleged work on the GE matter directly relates to the opinions he has offered here.  The Court disagrees and credits Mr. Budike's sworn deposition testimony that GEWEMS "was totally different – it wasn't a wireless control lighting fixture system at all." Budike Depo Tr., May 10, 2013, at 995:14-24; see also id. at 1079:12-1080:13 (testifying that during the GE timeframe, "we certainly didn't sell anything that resembled or operated such as Wi-Con[…]").  Finally, although the Court appreciates defendants' need to test Mr. Burkert's bias, this may be addressed through cross-examination at trial.  Therefore, and on the record currently before it, the Court will not require the production of documents related to Mr. Burkert's prior consulting work for plaintiff.

**Conclusion**

Accordingly, defendants' requests are GRANTED in part and DENIED in part, as set forth above.  Plaintiff shall produce any documents ordered by this ruling within fourteen (14) days.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. .Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon motion timely made.

SO ORDERED at Bridgeport this 20th day of February 2013.

```
        /s/
_____
HOLLY B. FITZSIMMONS
UNITED STATES MAGISTRATE JUDGE
```