```
                UNITED STATES DISTRICT COURT
                  DISTRICT OF CONNECTICUT


POWERWEB ENERGY, INC.           :
                                :
                                :
v.                              :      CIV. NO. 3:12CV220 (WWE)
                                :
HUBBELL LIGHTING, INC. AND      :
HUBBELL BUILDING AUTOMATION,    :
INC.                            :
```

RULING ON DEFENDANTS' MOTION TO STRIKE [DOC. #215]

Defendants Hubbell Lighting, Inc. and Hubbell Building Automation, Inc. move to strike certain portions of plaintiff's expert, Rod P. Burkert's, supplemental expert report. For the reasons articulated below, defendants' motion to strike new opinions from plaintiff's unauthorized damages report [Doc. #215] is DENIED.

1. **Background**

In this action, the plaintiff, Powerweb Energy, Inc., accuses defendants, Hubbell Lighting, Inc. and Hubbell Building Automation Inc., of breaching licensing contracts and of misappropriating trade secrets and confidential information in connection with wireless lighting controls, known as the Wi-Con project. [Doc. #1]. Plaintiff seeks monetary damages "in excess of a billion dollars." [Id.].

On July 5, 2013, to support its claim for economic damages, plaintiff disclosed several experts, including Rod P. Burkert, CPA/ABV, CVA.[1] Plaintiff retained Mr. Burkert "to opine, with a

---

[1] On June 3, 2013, the Court granted the parties' joint motion for

reasonable degree of professional certainty, as to the amount of damages suffered by Plaintiff as a result of the alleged actions of Defendants, as generally described by the court documents and filings." Mr. Burkert's report is dated July 5, 2013, and is related to the "economic loss of plaintiff." On August 9, 2013, in response to Mr. Burkert's report, and in accordance with the scheduling order, defendants served the "responsive expert report" of Suzanne M. Buckley. Defendants engaged Ms. Buckley to "review and comment" on plaintiff's alleged economic loss, as opined by Mr. Burkert and to independently evaluate plaintiff's potential damages. Ms. Buckley's fifty (50) page report largely criticizes Mr. Burkert's methodology and opinions. Ultimately, Ms. Buckley opines, <u>inter alia</u>, that plaintiff's damages, "if any, should be less than $358,656."

On September 3, 2013, in response to Ms. Buckley's report, plaintiff served Mr. Burkert's supplemental expert report, portions of which defendants now seek to strike as untimely and unauthorized by the scheduling order.

2. **<u>Legal Standard</u>**

Rule 26(a)(2)(B)(I) of the Federal Rules of Civil Procedure requires that a written expert report contain "a complete statement of all opinions the witness will express and the basis and reasons for them[…]". "It should be assumed that at the time an expert issues his report, that report reflects his full

---

extension of time and entered the parties' proposed revised scheduling order. [Doc. #171]. Pursuant to this Order, expert reports or disclosures and affirmative damages analysis or disclosures were to be served by July 5, 2013. Responsive expert reports or disclosures and responsive damages analysis of disclosures were to be served by July 26, 2013. [<u>Id.</u>].

knowledge and complete opinions on the issues for which his opinion has been sought." Innis Arden Golf Club v. Pitney Bowes, Inc., No. 3:06 CV 1352(JBA), 2009 WL 5873112, at *3 (D. Conn. Feb. 23, 2009) (quoting Sandata Techs., Inc. v. Infocrossing, Inc., Nos. 05 Civ. 09546(LMM)(THK), 06 Civ. 01896(LMM)(THK), 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007) (citation omitted)).

However, an expert witness has a duty to supplement his or her report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing…" Innis Arden, 2009 WL 5873112, at *2 (quoting Fed. R. Civ. P. 26(e)(1)(A), (2)).  "If a party fails to provide information… as required by Rule 26(a) or (e), the party is not allowed to use that information… to supply evidence… at trial, unless the failure was substantially justified or is harmless…" Innis Arden, 2009 WL 5873112, at *2 (quoting Fed. R. Civ. P. 37(c)(1)).  "Rule 37(c)(1)'s preclusionary sanction is automatic absent a determination of either substantial justification or harmlessness." Innis Arden, 2009 WL 5873112, at *2 (quoting Lore v. City of Syracuse, No. 5:00-CV-1833, 2005 WL 3095506, at *3 (N.D.N.Y. Nov. 17, 2005)).

"Plaintiff's duty to supplement its initial expert report does not arise when plaintiff seeks to bolster its earlier submission but, rather, arises 'only if the expert subsequently learns of information that was previously unknown or

3

unavailable, that renders information previously provided in an initial report inaccurate or misleading because it was incomplete....'" Innis Arden, 2009 WL 5873112, at *3 (D. Conn. 2009) (quoting Sandata Techs., 2007 WL 4157163, at *4 (emphasis in original); see Buxton v. Lil' Drug Store Prods., Inc., No. 2:02CV178KS-MTP, 2007 WL 2254492, at *5 (S.D. Miss. Aug. 1, 2007) (citations omitted) ("Courts have ... made it clear that supplemental expert reports cannot be used to 'fix' problems in initial reports.") (multiple citations omitted), aff'd, 294 Fed. Appx. 92 (5th Cir. 2008)).

### 3. Discussion

Defendants move to strike certain portions[2] of Mr. Burkert's supplemental expert report. Defendants argue that the supplemental report is not a true "supplement" because it contains new opinions that could have been disclosed in the original report. Defendants also argue that the Court should strike portions of the supplemental report because it violates the Court's scheduling order, plaintiff has not offered substantial justification for the untimely report, and the supplemental report prejudices defendants.

Plaintiff argues that the supplemental report is proper under Rule 26(e). Plaintiff also argues that the factors for excluding relevant and important information have not been met, and therefore, the Court should not strike the challenged portions of the supplemental report.

---

[2] In total, defendants seek to strike sixty three (63) bulleted paragraphs. [Doc. #219-2].

4

### *a. Timing and Contents of Supplemental Report*

Mr. Burkert's original report consists of six (6) pages, attached to which are two (2) appendices[3] and, twenty two (22) pages of schedules reflecting Mr. Burkert's damages calculations and supporting information. Mr. Burkert opens his expert report with a summary of his opinions, including, <u>inter</u> <u>alia</u>, that plaintiff "has suffered economic damage in the form of lost profits" in the amount of $752,721,475 for the period of March 2011 through August 2018, and $1,209,945,325, for the period of March 2011 through August 2020.  These amounts include prejudgment interest, discounted to June 30, 2013, the approximate date of Mr. Burkert's report.  Alternatively, Mr. Burkert opines that defendants have been unjustly enriched in the amount of $2,373,160.  After briefly addressing the underlying facts and the scope of his engagement, Mr. Burkert sets forth the bases and reasons for his expressed opinions. He explains the methodologies used to measure economic damages and lost profits, as well as the steps followed to calculate plaintiff's lost profits and defendants' alleged unjust enrichment damages.  Mr. Burkert notes that he "anticipate[s] being called to render rebuttal testimony responsive to experts called by Defendants."

By contrast, the September 3 supplemental report is twenty four (24) pages long, attached to which are one (1) appendix[4] and

---

[3] The appendices total eight (8) pages. Appendix A sets forth the data and information Mr. Burkert considered in formulating his opinions. Appendix B is Mr. Burkert's curriculum vitae.

[4] The appendix lists the data and information Mr. Burkert considered in

three (3) pages of supplemental calculation schedules.[5] The supplemental report purports to "address various comments and criticisms levied by the Buckley Report against [Mr. Burkert's] original report[…]"  Mr. Burkert also states that the "supplemental responses and the opinions expressed in [his] original report continue to be based on the same assumptions as [his] original report."[6] The supplemental expert report is formatted as a point-counterpoint to Ms. Buckley's report and sets forth Mr. Burkert's responses to the criticisms levied by the Buckley report.

These responses include Mr. Burkert's criticisms of the Buckley report (i.e., "The Buckley Report does not consider that Wi-Con is a more cost-effective solution that would attract new customers who are not part of McKinsey's revenue data and would expand the entire lighting controls market."), as well as statements further explaining his critiqued opinions and/or why he did or did not consider certain information in forming his opinions (i.e., in response to Ms. Buckley's criticism that Mr. Burkert did not consider a Wi-Con forecast prepared by plaintiff in early 2010, Mr. Burkert states, "The 2010 plan does not provide a reliable comparison because it is an unfinished and outdated draft and was never intended to project all of the

---

formulating the opinions expressed in the supplemental report.

[5] Including, updated unjust enrichment calculations to correct an error in the prior report and, a supplemental schedule "10a" entitled "Excluded United States Installed Base of 'Retrofitable' Fixtures."

[6] Following Mr. Burkert's expert deposition, plaintiff served defendants with an "Amendment to Supplemental Expert Report" dated September 18, 2013, which is not challenged here.

unexpected revenue" and "The draft plan was prepared before Wi-Con was expanded into additional types of Hubbell fixtures with a larger relay, which would change the penetration rate.").

After a careful review of Mr. Burkert's expert reports, the Court finds that the challenged portions of the supplemental report are not proper supplementation. Rather, the Court finds that these portions are a curious mix of "rebuttal"[7] and statements aimed at bolstering Mr. Burkert's prior opinions in light of Ms. Buckley's criticisms.  Indeed, as plaintiff admits in its opposition brief, "Mr. Burkert's supplemental report did not state new opinions – it simply explained the deficiencies in Ms. Buckley's criticisms of opinions stated in the original report." [Doc. #246, 4].  As briefly discussed above, a supplemental report cannot be used to bolster an earlier submission or to otherwise "fix" problems in initial reports. See Lidle, 2009 WL 4907201, at *5 ("Rule 26(e) is not, however, a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report.").  Rather, supplementation is proper where, unlike here, it is used to correct mistakes. See, e.g., Assoc. Elec. Gas Ins. Serv. v. Babcock & Wilcox Power Generation Group, Inc., Civ. No. 3:11CV715(JCH)(HBF), 2013 WL 4456640, at

---

[7] The better word to describe the supplemental report, and many of the opinions expressed therein is "reply." C.f. Lidle v. Cirrus Design Corp., No. 08 Civ. 1253(BSJ)(HBP), 2009 WL 4907201, at *1 n.1 (S.D.N.Y. Dec. 18, 2009) (compiling cases)("With respect to expert disclosures, [the word "rebuttal"] is frequently used to refer to the second of two rounds of expert discovery."). However, for ease of reference, the Court will refer to the challenged report as the "supplemental report", and certain of the opinions expressed therein as "rebuttal" material.

*4 (D. Conn. Aug. 16, 2013) (denying motion to strike supplemental expert report correcting calculations).

Moreover, plaintiff's argument that "Mr. Burkert could not have <u>rebutted</u> Ms. Buckley's erroneous criticisms before they were made," further reinforces the Court's conclusion that certain portions of the supplemental report constitute rebuttal material (emphasis added). Although Rule 26(a)(2)(D)(ii) of the Federal Rules of Civil Procedure permits rebuttal expert testimony that is "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) or (C)[…]," the Court is cognizant that the scheduling order did not permit a third-round of expert reports. Therefore, because the Court finds that the challenged portions of the report constitute either improper supplementation and/or unauthorized rebuttal, the Court must now determine whether to strike the challenged portions of the supplemental report as an appropriate sanction.[8]

### b. Exclusion of Supplemental Opinions

Courts in the Second Circuit are directed to consider the following factors in determining whether to exclude expert testimony: "(1) the party's explanation for the failure to comply with the discovery order; (2) the importance of the testimony of the precluded witness; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new testimony; and (4) the possibility of a continuance."

---

[8] The Court rejects plaintiff's argument that the supplementation was appropriate under Rules 26(a)(3) and 26(e)(2) in light of this finding.

Sofitel Inc. v. Dragon Med. & Scientific Comm., Inc., 118 F.3d 955, 961 (2d Cir. 1997) (citing Outley v. City of New York, 837 F.2d 587, 590-91 (2d Cir. 1988)).  "None of these factors are dispositive and each factor is to be balanced against the others in making the determination."  Lab Crafters, Inc. v. Flow Safe, Inc., No. CV-03-4025 (SJF)(ETB), 2007 WL 7034303, at *6 (E.D.N.Y. Oct. 26, 2007) (citing Sofitel, 118 F.3d at 962).

> *i. Explanation for Failure to Comply with Court Ordered Deadlines*

Plaintiff asserts that there was no failure to comply with the disclosure requirement because it would have been impossible for Mr. Burkert to address Ms. Buckley's criticisms in his initial report and that it was timely served pursuant to Rule 26(a)(3).  In light of the Court's finding that the supplemental report is not a proper supplement, this argument is now moot.  Even construing the supplemental report as a substantively proper reply, the report still runs afoul of the scheduling order because it did not call for a third round of expert reports.  Here, while the Court finds plaintiff has failed to allege good cause for failing to comply with the scheduling order, the Court cannot further find that plaintiff was motivated by a dilatory purpose. Moreover, on the current record it is not evident that plaintiff acted in bad faith or truly sought to place defendants at an unfair disadvantage. Indeed, the Court credits that plaintiff served the supplemental report in short order and, more importantly, prior to Mr. Burkert's deposition (albeit just one day before).  By taking such steps,

defendants had an opportunity to address the report at Mr. Burkert's deposition. Although the proper course would have been for plaintiff to seek leave to serve the supplemental report, such an omission does not necessarily rise to bad faith. Therefore, although the first Sofitel factor weighs in favor of preclusion, it does not require it. See also Lab Crafters, 2007 WL 7034303, at *7 ("Exclusion of expert testimony should be reserved for those rare cases where a party's conduct represents flagrant bad faith and callous disregard for the Federal Rules of Civil Procedure.").

      *ii. Importance of Testimony Sought to be Excluded*

With respect the second Sofitel factor, plaintiff argues that the opinions defendants seek to strike are "indisputably important" where defendants are seeking to prevent Mr. Burkert from responding to criticisms of his analysis. After a careful review of the challenged portions of the supplemental report, the Court agrees that as a whole, the information defendants seek to strike is central to the determination of damages, a hotly contested and significant issue. Accordingly, the importance of Mr. Burkert's opinion weighs in favor of its admission. See, e.g., Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC, 571 F.3d 206, 213 (2d Cir. 2009) (finding trial court abused its discretion in excluding expert opinion for noncompliance with pretrial order where, inter alia, the excluded expert's testimony was critical to party's defense on the issue of causation).

*iii. Prejudice Suffered by Defendants*

The third factor to consider is the prejudice suffered by defendants "as a result of having to prepare and meet new testimony." Sofitel, 118 F.3d at 962. Plaintiff discounts any prejudice suffered because defendants were able to depose Mr. Burkert regarding the supplemental report and received it several months prior to trial. Defendants, however, argue they are prejudiced because (1) plaintiff's failure to submit a complete report prevented Ms. Buckley from fully responding to plaintiff's entire damages case; (2) plaintiff relies on the new opinions to challenge the admissibility of Ms. Buckley's opinions; and (3) defendants have incurred the costs of taking Mr. Burkert's deposition, bringing the motion to strike, and defending against plaintiff's attempt to exclude Ms. Buckley's opinions.

The Court credits plaintiff's argument that any prejudice suffered by defendants has been mitigated by defendants' having deposed Mr. Burkert after receiving the supplemental report. See Equant Integration Serv., Inc. v. United Rentals, Inc., 217 F.R.D. 113, 118 (D. Conn. 2003)(finding plaintiff could cure prejudice by producing expert for additional deposition); Lab Crafters, 2007 WL 7034303, at *8 (finding no prejudice to plaintiff where plaintiff already had an opportunity to depose expert, and had done so, as to the contents of the expert's report). Because defendants have already had the opportunity to depose Mr. Burkert on the contents of his supplemental report, defendants are "therefore able to amply prepare for [his]

11

testimony by the time trial commences", and in this regard, "there is no significant prejudice" to defendants in allowing the challenged opinions. Id.

Nevertheless, the Court finds that defendants have suffered some prejudice by being denied the opportunity to respond to Mr. Burkert's supplemental report. However, this prejudice may also be mitigated if defendants are provided an opportunity to so respond.  Accordingly, within thirty (30) days of this Order, defendants may seek leave to serve Ms. Buckley's sur-reply report. Assuming that permission is granted to serve a sur-reply report, and to the extent that any of the opinions expressed therein implicate issues in the pending motion in limine, defendants may also seek leave to file a supplemental memorandum in opposition to the motion in limine.[9] As to the financial harm allegedly suffered by defendants, the Court will not award fees or costs incurred for deposing Mr. Burkert, opposing the motion in limine, or bringing the motion to strike.  The Court will, however, require plaintiff to bear the cost of Ms. Buckley's sur-reply report, assuming that permission is granted for defendants to serve such a report.

       *iv. Possibility of Continuance*

Finally, the Court considers the possibility of continuance.  In this case, no trial date has been set, and the deadline for filing pretrial memoranda has been stayed pending the resolution of the pending summary judgment and Daubert motions. [Doc. #311].  Although allowance of the supplemental

---

[9] The Court will not permit any sur-sur reply reports.

12

report may require further briefing on the <u>Daubert</u> motion regarding Ms. Buckley's opinions, it does not appear at this juncture that allowing the opinions will adversely affect the progress of the case in a significant way.  Therefore, this factor also weighs in favor of allowing the entirety of Mr. Burkert's opinion.

Based on the Court's balancing of the <u>Sofitel</u> factors, and the general preference to determine issues on the merits, defendants' motion to strike is DENIED.  See <u>Lab Crafters</u>, 2007 WL 7034303, at *2 ("[C]ourts generally favor the determination of issues on the merits."); <u>Scientific Components Corp. v. Sirenza Microdevices, Inc.</u>, No. 03 CV 1851(NGG)(RML), 2008 WL 4911440, at *4 (E.D.N.Y. Nov. 13, 2008) (multiple citations omitted)("[P]recluding testimony of an expert, even where there has not been strict compliance with Rule 26, may at times tend to frustrate the Federal Rules' overarching objective of doing substantial justice to litigants."). The Court notes that nothing in this ruling should be construed as an opinion on the admissibility of the expert reports or testimony.

### 4. <u>Conclusion</u>

For the reasons set forth herein, the defendants' motion to strike [Doc. #215] is DENIED.

This is not a Recommended Ruling. This is a discovery ruling or order which is reviewable pursuant to the "clearly erroneous" statutory standard of review. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); and D. Conn. L. Civ. R. 72.2. As such, it is an order of the Court unless reversed or

modified by the district judge upon motion timely made.

ENTERED at Bridgeport, this 16th day of April 2014.

```
            _____/s/_____
            HOLLY B. FITZSIMMONS
            UNITED STATES MAGISTRATE JUDGE
```